Brinkerhoff, C.J.
It is very evident that, taken literally as it stands, the attempted description contained in the mortgage, does not afford the means of identifying any land whatsoever; for it furnishes no place of beginning — no starting point. But, if we prefix the words, “ beginning at a point,” or some equivalent expression, and drop the words, “of land,” ■then, by an ordinary and allowable reference to the extrinsic circumstances stated in the cross petition, the description will become sufficiently definite and intelligible. And the question is made and discussed by counsel in argument, whether, in accordance with established rules of construction, and the suggestions of approved precedent, this may not be done. But on this point the members of the court would probably find it difficult to agree; and we, therefore, pass it ever, and proceed upon the assumption of the correctness of what the plaintiff claims, to-wit: that the attempted description in the mortgage is so uncertain as to render it impossible, by means of it, to indentify the land attempted to be described.
On this assumption, and admitting that there is a mistake in the description, which can not be corrected by construction, the defendant, Beach, contends that the court ought to give effect to the clearly ascertained intentions of the parties, by reforming the mortgage, or by dealing with the case .as if the mortgage were reformed. On this question we find no serious difficulty.
It will be noticed that we are not embarrassed by any question of fact, nor by any question as to the amount or degree of evidence necessary for the proof of any fact. The cross-petition alleges, and the demurrer admits, the fact of mistake, and that the plaintiff, at the time he caused his attachment tc ■be issued, had knowledge of the mistake, and of all Beach’s rights in the land. The fact of mistake, and the fact of no-tice, are admitted by the demurrer.
*287 Now, if this were a case between the parties to the mortgage alone, it is settled by a uniform current of decisions in Ohio, that this mortgage would, on the admitted mistake, as between them, be reformed. Davenport v. Sovill, 6 Ohio St. Rep. 459, and cases there cited. And, aside from our own peculiar statutory provisions in respect to mortgages, and the holdings of our courts under them, it seems to be equally well settled, by decisions of courts of high authority in neighboring states, that, on general principles of jurisprudence, "courts of equity will interfere to correct mistakes, not only between the original parties, but also those claiming under them in privity, as heirs, legatees, devisees, assignees, voluntary grantees, judgment creditors, or purchasers from them, with notice of the facts.” Adam’s Eq. 406, No. 1. 1 Sto. Eq. sec. 165. Simmons v. North, 3 Sm. & Mar. R. 67, is a strong case directly in point on this question; and the same may be said of Wall v. Arlington, 13 Georgia, R. 88, and White v. Wilson, 6 Blackf. 448. See also Gouverneur v. Titus, 6 Paige Ch. R. 347, and Whitehead v. Brown, 18 Ala. R. 682. The reasoning on which these cases go, is this, that there is 9 clear equity in favor of the vendee or mortgagee, as the case may be, as against his mortgagor or vendor, on the ground of which a court of equity will interfere to correct the mistake; that a judgment or execution creditor of such vendor or mortgagor, with notice of such equity, or a purchaser at a sale under execution, with like notice, stands in the shoes of the vendor or mortgagor, and so can have no better right or higher claim than the debtor himself would be permitted to assert.
But one question then remains; and that is, whether, on the state of fact alleged in the cross petition and admitted by the demurrer, a court of equity in this State will be precluded by our peculiar legislation, from granting the relief prayed for.
By the first section of the act of Feb. 22, 1831, “ to provide for the proof, acknowledgment, and recording of deeds and other instruments of writing” (8 Curwen’s Rev. Stat. 2448), it is provided, that when any competent person “ shall *288 execute, within this State, any deed, mortgage, or other instrument of writing, by which any land, tenement, or hereditament, shall be conveyed, or otherwise affected or incumbered in law, such deed, mortgage, or other instrument of writing, shall be signed and sealed by the grantor or grantors, maker or makers, and such signing and sealing shall be acknowledged by such grantor or maker in the presence of two witnesses, who shall attest such signing and sealing, and shall subscribe their names to such attestation; and such signing and sealing shall also be acknowledged by such grantor or grantors, maker or makers, before” certain officers therein named.
By the seventh section of said act, it is provided, “ that all mortgages executed agreeably to the provisions of this act, shall be recorded in the office of the recorder of the county in which such mortgaged premises are situated, and shall take effect from the time when the same are recorded,” etc. And by a subsequent act of March 16, 1838, “ declaratory of the laws upon the subject of mortgages,” it is provided “ that mortgage deeds do, and shall take effect and have preference, from the time the same are delivered to the recorder of the proper county, to be by him entered on recor.d.” 1 Curwen’s Rev. Stat. 430.
Under the express and peculiar phraseology of these statutes, a series of authoritative decisions have been made in this State, holding that such mortgages only as were signed, sealed, witnessed and acknowledged in accordance with the provisions of the first section of the act first above refoi red to, were entitled to be recorded, or could be recognized as having been delivered for record or recorded; and that none but mortgages so executed and delivered for record, or recorded, could have any effect whatsoever, either at law or in equity, as to third parties, whether such third parties had notice of'the defectively executed or unrecorded mortgage or not. White v. Denman, 16 O. R. 59; Bloom v. Noggle 4 O. St. R. 45; Erwin v. Shuey, 8 O. St. R. 509; White v. Denman, 1 O. St. R. 110. In this last named case, the court say that the cor *289 rectness of these decisions has been much questioned; that they are at variance with the former analogies of the law ; and' the judge delivering the opinion of the court declares, that if the question “ had not been determined by adjudication in this State, and affirmed and adhered to for a number of years,, a majority of this court would feel constrained to take a different view of it;” yet, inasmuch as it had become a rule of property in settling priorities among creditors, the court acting on the maxim stare decisis would not disturb it.
Now, for these reasons, we will not disturb the rule thus established. It has the merit, at least, of simplicity, and of being well known and understood. But the question before, us is, not whether we will disturb the rule thus established, but whether we shall enlarge the rule, and extend its operation to a case not within the letter of the statutes, and clearly distinguishable from any which have heretofore been held to be within these statutes. The rule is a statutory rule; and the cases referred to proceed in obedience to what were deemed the unbending and imperious requirements of a legislative enactment. These statutes relate solely to the mode of execution, and the recording of the mortgage; a mistake in these respects, it is settled, can not be corrected; but, as to all mistakes and defects of the instrument, in other respects, the statutes are entirely silent, and upon them the decisions which have been made upon questions arising under these statutes have no bearing.
As to the due and formal execution and recording of the mprtgage in the case before us, no exception is taken; in. these respects it is admitted to be perfect. And it seems to us, therefore, that we are not only at liberty, but are required to stop where the statutes stop ; and as to a mistake-in an attempted description of mortgaged premises — which is-a matter not covered by the statutes — to resort again to the general doctrines of equity jurisprudence, on which our statutes are an admitted innovation.
This view of the case overrules the demurrer to the cross-petition.
*290 Demurrer to cross petition overruled, and cause remanded, with leave to plaintiff to answer cross petition.
Scott, Sutliee, Peck and G-holson, JJ., concurred.